IN THE UNITED STATES
DISTRICT COURT OF MARYLAND

FRANK KEITH GOODMAN,

    PETITIONER-MOVANT,

v.

UNITED STATES OF AMERICA,

    RESPONDENT.

                                       /

Case No. RDB-08-056

## MEMORANDUM OF LAW IN SUPPORT OF MOTION PURSUANT TO 28 U.S.C. §2255

    COMES NOW, Petitioner, Frank Keith Goodman, pro-se, respectfully requesting for relief pursuant to 28 U.S.C. §2255 on the grounds that the Petitioner was effective assistance of counsel and other violations of the Constitution of the United States of America.

A. Legal Standard-

    The standard of review for a pro-se filing is liberal. If this Honorable Court can reasonably read these pleadings to state a valid claim of which Petitioner, Frank Keith Goodman can prevail, this court should grant despite failure to cite proper legal authority, confusion of legal theories, or poor syntax. See Haines v. Kerner, 404 U.S. 519 (1972) and Kamen v. Kemper Financial Service, Inc., 500 U.S. 90 (1991).

B. Jurisdiction-

    This Court has jurisdiction under §2255 and governing rules which provides that if the judge finds the movant's assertions to be meritorious, he "shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate".

1

ISSUE I
===

ARGUMENT:

I. APPEALLATE COUNSEL WAS INEFFECTIVE FOR FAILURE TO RAISE NEW INTERVENING LAW DURING APPEAL BASED ON THE SUPREME COURTS RULING IN FOWLER v. UNITED STATES.
---

RELEVANT FACTS-

Petitioner was charged by way of superseding indictment with Conspiracy to kill another person with intent to prevent his communication to a law enforcement officer or judge of the United States related to the commission of or possible commission of a federal crime in violation of 18 U.S.C. §1512(a)(1)(C) (Count Three); and the substantive offense of, killing another person with intent to prevent the communication by any person to a law enforcement officer or judge of the United States in violation of 18 U.S.C. §1512(a)(1)(C) (Count Four) relating to the murder of Carl Stanley Lackl on July 2, 2007.[1]

At trial the government produced evidence that Lackl provided assistance to the Baltimore City Police Department in the investigation of the murder of Larry Haines. Lackl called BCPD and informed them that he had witnessed a man discard a gun after hearing shots in the Montford Ave, area of East Baltimore. Upon interview Lackl gave a recount of events[2] and subsequently made a photo array identification of Patrick Byers. Lackl was scheduled to be a witness in the murder trial of State of Maryland v. Byers.

---

[1] Counts 8 and 9 charged defendant Byers soley with violation of 924(c) & 922(g) offenses relating to the death of Larry Haines on 3/4/06.

[2] Lackl conducted a video taped interview with Baltimore City Police.

2

The Government presented the theory that the 924(c) and 922(g) violations charged against defendant Patrick Byers was a "possible" federal offense and Lackl a "potential" federal witness based on these charges to satify the requirements of §1512(a)(1)(C). See Trans pg.506 4/15/09 and pg.680 4/16/09.

In order to satisfy the intent element the Court instructed the jury: "nor need the Government prove that the defendant knew that the judge is a United States judge or a law enforcement officer, is a federal law enforcement officer. The law does not require that a federal proceeding be pending at the time or even that it was about to be initiated when the attempted action, threat, intimidation or corrupt persuasion was made. Nor does the law require that the recipient of the intimidation must be involved in an ongoing federal investigation of a federal crime. See Trans pg.726 4/16/09. In the jury instructions Counts 8 and 9 were identified as possible federal offenses that could have been initiated. See Trans pg.723 4/16/09.

There was no evidence presented to show that a federal proceeding had been instituted, about to be instituted, or even contemplated at the time that Lackl was murdered. In fact the government conceeded that Counts 8 and 9 of the superseding indictment were filed to substantiate 18 U.S.C. §1512(a)'s requirements.

DISCUSSION-

Since the verdict was rendered, the Supreme Court has decided the case of Fowler v. United States,___ S.Ct. ___, 2011 U.S. LEXIS 4019, 2011(May 26,2011). Therein, the Supreme Court resolved a split among the circuits as to the elements required to be proven to sustain a conviction for killing of a witness under section 1512. The difference

between circuits resulted from whether the United States must make any showing as to whether the witness would have communicated to a <u>federal</u> law enforcement official rather than <u>any</u> law enforcement official. See <u>Fowler, supra</u>. ("The question here is how this language applies when a defendant (1)kills a victim, (2)with an intent (a)to prevent a communication (b)about the commission or possible commission of a federal offense but (c)to law enforcement officers in general rather than to some specific law enforcement officer or set of officers which the defendant has in mind".)(emphasis in original).

    The Supreme Court held:

> [T]he Government must show a reasonable likelihood that, had,e.g,the victim communicated with law enforcement officers,at least one relevant communication would have been made to a federal law enforcement officer. That is to say,where the defendant kills a person with an intent to prevent communication with law enforcement officers generally,that intent includes an intent to prevent communications with <u>federal</u> law enforcement officers only if it is reasonably likely under the circumstances that (in the absence of the killing) at least one of the relevant communications would have been made to a federal officer. (emphasis in original).

The holding specifically overruled the Fourth Cicuit's decision in <u>United States v. Harris</u>,498 F.3d 278 (4th Cir. 2007). Therein, the Fourth Circuit held that no showing was necessary concerning whether the witness would actually communicate with a federal law enforcement official because "[s]o long as the information the defendant seeks to suppress actually relates to the commission or possible commission of a federal offense, the federal nexus requirement is established". Id. at 286. See <u>United States v. Wainright</u>, U.S. Dist. LEXIS 62480 (4th Cir. June 2,2011).

4

In the case at hand the court specifically relied on <u>Harris</u> in instructing the jury, as it was the controlling precedent at the time of trial. Thus, the jury was not instructed to consider whether the communication would be to a federal law enforcement officer, and, in fact, was instructed to the contrary. See Relevant Facts infra.

INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL-

Petitioner's direct appeal in the Fourth Circuit was decided May 6, 2011. See <u>United States v. Byers</u>, 649 F.3d 197 (4th Cir. 2011). A Petition for Writ of Certiorari to the United States Supreme Court was filed and subsequently denied. See <u>Goodman v. United States</u>, 2011 U.S. LEXIS 7473 (U.S., Oct. 17, 2011).

Between the denial of direct appeal, yet before the issuance of the mandate and filing of certiorari the statutory interpretation announced in <u>Fowler</u> was handed down (May 26, 2011). Appellate counsel was ineffective for failure to raise this intervening change in law on petitioners behalf.

The Sixth Amendment right to effective assistance of counsel extends to require such assistance on direct appeal of a criminal conviction. See <u>Evitts v. Lucey</u>, 469 U.S. 387 (1985).

In order to establish a claim that appellate counsel was ineffective for failure to pursue a claim, the applicant must normally demonstrate (1) that his counsel's representation fell below an objective standard of reasonableness in light of the prevailing professional norms, and (2) that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. See <u>Pruett v. Thompson</u>, 996 F.2d 1560, 1568 (4th Cir. 1993).

To address these questions one only needs to look to the facts of the case and the application of the statutory interpretation to the case.

Effective counsel would have petitioned the court for remand of the case to consider the §1512 convictions in light of Fowler given there clear impact by overruling court precedent in Harris.

# ISSUE II

OVERVIEW:

The federal murder-for-hire statute provides for conviction of a defendant who: travels in or causes another to travel in interstate or foreign commerce, or uses or causes another to use the mail or any facility of interstate or foreign commerce, with intent that a murder be committed in violation of the laws of any State or the United States as consideration for the receipt of, or as consideration for a promise or agreement to pay, anything of pecuniary value, or who conspire to do so. See 18 U.S.C. §1958.

In reviewing the trial testimony the pecuniary value element is insufficient because the government failed to prove that anything of value was promised or given to Johnathan Ryan Cornish (aka-Brazy) for actually committing the murder of Carl Lackl.

The basis of this claim relies on the contention that to satisfy the pecuniary element of §1958 the defendant or his co-conspirator's must promise or provide something of value to the hitman as a quid pro quo for the murder.

The indictment specified "a sum of United States currency to be paid by defendants" as the compensatory gain to be provided inorder to establish the pecuniary element. However, at trial testimony was provided by Marcus Pearson (aka-Pound) that $2200 was given to him by Patrick Byers via Frank Goodman for the murder of Carl Lackl. Johnathan Ryan Cornish on the otherhand was solicited by Stephen Thompson and Marcus Pearson as a member of the Bloood's Organization without any compesatory gain involved. After the conclusion of the murder Cornish was given $100 as a afterthought to buy some weed. See Trial Trans.

7

pg.59-190 3/24/09 and 3/25/09 Trans. pg.2-20. This was insufficient to establish the pecuniary element.

In United States v. Chong, 419 F.3d 1076 (9th Cir. 2005), the government presented evidence that (1) defendant was the leader of an organized crime gang, (2) defendant had discussed the need to kill the leader of a rival gang, (3) defendant's underlings were commissioned by his lieutenants to travel to Boston for the purpose of killing the gang rival, and (4) an underling was given $100. The Appellate Court determined that, under 18 U.S.C. §371 and the Pinkerton doctrine, there was sufficient evidence from which a jury could have found that defendant or his co-conspirators set in motion a series of events, resulting in his underlings traveling to Boston for the purpose of killing a gang rival. However, the jury had insufficient evidence to convict defendant on the murder-for-hire offenses under 18 U.S.C. §1958 because the government failed to prove that defendant, or one of his co-conspirators, promised anything of pecuniary value to the hitmen as a quid pro quo for murdering the gang rival. The evidence did not establish that the underling knowingly agreed to travel across the country to murder the gang rival in exchange for the $100. See also United States v. Frampton, 382 F.3d 213 (2d Cir. 2004)(same); and United States v. Richeson, 338 F.3d 653 (7th Cir. 2003)("consideration element"). Compare United States v. Acierno, 579 F.3d 694 (6th Cir 2008)(distinguished from United States v. Chong); and United States v. Tinsley, 1998 U.S. App. LEXIS 29373 (4th Cir. 1998)(Evidence sufficient to establish pecuniary element).

Once again, in the context of §1958 there must be evidence that the hitman clearly understood they would receive something of

8

of pecuniary value in exchange for performing the solicited murderous act.

Trial counsel's performance was deficient for failure to object to the sufficency of the pecuniary element in the §1958 prosecution. Had counsel raised this contention the substantive count would have to be removed.

A.

During closing and rebuttal argument the Government made a host of improper uncontested comments that infected the trial with unfairness as to make the resulting conviction a denial of due process. See, United States v. Scheetz, 293 F.3d 175 (4th Cir. 2002). In reviewing a claim of prosecutorial misconduct based upon improper remarks or arguments, the test for reversible prosecutorial misconduct is two-fold. A petitioner must show "(1) that the prosecutor's remarks or conduct were, in fact, improper and (2) that such remarks or conduct prejudiced the [petitioner] to such an extent as to deprive [him] of a fair [proceeding]." United States v. Allen, 491 F.3d 178 (4th Cir. 2007)(citation omitted).

Vouching occurs "when the prosecutor's actions are such that a jury could reasonably believe that the prosecutor was indicating a personal belief in the credibility of the witness". See, United States v. Lewis, 10 F.3d 1086 (4th Cir. 1993). "The prosecutor may not...make explicit personal assurances that a witness is trustworthy or implicitly bolster the witness by indicating that information not presented to the jury supports the testimony". Id. See, United States v. Nwankwo, 2 F.Supp. 2d 765 (4th Cir. 1998).

Petitioner's first contention of prosecutorial misconduct is that the Government impermissibly bolsterd Marcus Pearson's testimony by numerous direct statements and inferences that Pearson became truthful after Federal Public Defenders Service was provided to him.

The government by repeatedly identifying the appointment of Federal-Counsel as the point when Pearson began to provide his true involvement and therefore to implicate defendants constituted impermissible

bolstering of a witness.

Pearson was the Governments key witness based on his alleged role as facilitator of the Murder plot. The Court recognized during the Rule 29 Motion that if Pearson was found credible by the jury it would sustain a conviction under the counts charged. Trial Tran. pg.432 4/14/09. Thus, his credibility was paramount.

As such, bolstering of Pearson by the prosecutor during closing argument had more than a slight effect on the outcome of the case. By arguing that Federal Public Defender representation holds some significant factor that ensures truthful testimony the Government has implicitly placed his personal belief behind the contention that Mr.Pearson provided truthful testimony.

In United States v. Nwankwo,2 F.Supp. 2d 765 (4th Cir. 1998) the court found the first prong in the analysis whether prosecutorial remarks were improper to be satisfied where the Government in closing argued that the jury had to believe that the Government witnesses had lied in order to aquit. The Fourth Circuit joined the Eighth Circuit in concluding that "this form of argument is improper because it involves a distortion of the Government's burden of proof". See, e.g., United States v. Reed,724 F.2d 380 (8th Cir. 1984); United States v. Vargas,583 F.2d 380 (7th Cir. 1978)(prosecutor's equating of an acquittal with a finding that Government agents were lying improper because it excludes the possibility that the jury may "return a verdict of not guilty because the evidence might not be sufficient to convict the defendant beyond a reasonable doubt").

The prosecution used a related theme in rebuttal by advancing the contention that Pearson and defendant's should have opted for legal representation pre-interogation because that would have produced truthful testimony. Trial Tran. pg.672 6/16/09.

The improper comments amounted to a attack on Petitioner's waiving his right to counsel and voluntarily speaking with officers regarding the case.

B.

As a precursor, the Strickland [v. Washington, 466 U.S. 668 (1984)] standard requires petitioner to establish that counsel's performance fell below an "objective standard of reasonableness". Id. at 687-88. And that his counsel's deficient performance prejudiced his defense to the extent that the result of the proceeding would have been different had his counsel performed effectively. Id. at 687.

Failure to object to the prejudicial remarks of the prosecution constitutes conduct that is unreasonable under professional norms. See section A.

Prejudice in this context is manifested in a unfounded exceptance of the testimony of marcus Pearson a defacto instrumental witness for the Government. This reliance was perpetuated by the Government's improper assurances that once Federal Public Defender Service was provided the truth was obtained by the Government.

C.

Petitioner's second area of contention relates to the government's bolstering of Marcus Pearson's testimony based on his plea agreement with the government.

On 3/26/09 during the government's examination into the substance and understanding of Marcus Pearson regarding the plea agreement AUSA Purcell solicited:

> Q: Now, what is your understanding of the sentence you expect to receive if you're found to have been a truthful witness in this trial today and any other trials or matters in which you're asked to cooperate?
>
> A: You take my plea away from me.
>
> Q: What's your understanding if you abide by the plea agreement what your sentence will be?
>
> A: 35 years.
>
> Q: And what is your understanding, Mr. Pearson, would be the consequence of your breaching your plea agreement and being untruthful now, what could you possibly get?
>
> A: Life.
>
> Q: Life or death; is that correct?
>
> A: Yes
>
> Q: Or at least a possibilty of it?

Upon objection from counsel for Byers the Court during side bar examined Pearson's plea and concluded that a sentence of death was not applicable for a breach of the plea agreement. See Trial Tran. pg. 203-05 3/26/09.

The following examination resulted:

> Q: Mr. Pearson, I just asked you a moment ago about your understanding of your agreement with the government, not binding on the court, but your agreement between yourself and the United States government, if you abide by the terms of the plea agreement, what is

your understanding your sentence will be?

A: 35 years.

Q: And it's correct--actually, I mispoke--that the maximum sentence you would--if I may appraoch the witness? I'm not sure he can see this, if I put this in front of you page 9, can you read right there? Now having read that, Mr. Pearson what is the understanding of the sentence you would face if you did not abide by the terms of the plea agreement?

A: Life.

Q: Life? Thank You. Now have you been truthful here today in your testimony?

A: Yes.

During closing arguments on 4/16/09 the prosecution made the following remarks:

> Giblin: He's pled. He's facing a possible sentence of 35 years. That's an agreed sentence by the way between the government and him. Judge Bennett is not a party to any of these sentences. Judge Bennett can accept or reject them. We have no idea what he'll do and I suspect he doe doesn't either at this point. And if you don't like those s sentences, put it on me because my name is on each one of them. Trial Tran pg.528-529 4/15/09.

And in rebuttal argument:

> Purcell: And what's his motivation now? What's his mindset now? You've heard it from his lips. If I lie, I'll get Life. That's what he thinks. Telling you the truth. Trial Tran. pg.658 4/16/09.

The Rules of Federal Criminal Procedure 11(c)(1)(state in pertinent part:

> In General. An attorney for the government and the defendant's attorney, or the defendant when proceeding pro se, may discuss and reach a plea agreement. The court must not participate in these discussions, If the defendant plaeds guilty or nolo contendere to either a charged offense or a lesser or related offense, the plea agreement may specify that an attorney for the government will:
>
> (C) agree that a specific sentence or sentencing range is the appropriate disposition of the case, or that a particular provision of the Sentencing Guidelines, or

14

policy statement, or sentencing factor does or does not apply (such a recommendation or request binds the court once the court accepts the plea agreement). See also Notes of Advisory Committee on 1999 Amendments, Note to Subdivision (e)("the government and defense have actually agreed on what amounts to an appropriate sentence or have agreed to one of the specified components. The amendment also makes clear that this agreement is binding on the court once the court accepts it. ...[T]he court retains absolute discretion whether to accept a plea agreement".)

Nevertheless, a district court is not obliged to accept a particular plea agreement between the government and an accused, as it always has the authority to either accept or reject any agreement. See Fed. R. Crim. P. 11(c)(5); Wood, 378 F.3d at 348. If the court accepts a guilty plea, however, and thereafter decides to reject the underlying plea agreement that contains provisions of the type specified in Rule 11(c)(1)(A) or (C), it must, on the record, comply with Rule 11(c)(5). That is, the court must (1) advise the parties that it is rejecting the plea agreement, (2) afford the defendant an opportunity to withdraw his guilty plea, and (3) advise the defendant that, if his plea is not withdrawn, he may be sentenced more severly than contemplated by the plea agreement.

Pearson was under a Rule 11(c)(1)(C) plea ("C Plea) and as one of the stipulations was required to testify truthfully in order to avoid violating the terms of the agreement. "If he testifies truthfully he will get 35 years".

By its terms a Rule 11(c)(1)(C) plea is binding upon the court once the plea is accepted. The court has no discretion to deviate if the conditions are upheld by both parties.

The government's argument left the false impression that

15

the court was free to impose a sentence of the court's chosing. This discretion was relinquished when the plea was accepted under the C.Plea. See <u>United States v. Moon</u>,377 Fed. Appx. 313 (4th Cir. 2010); <u>United States v. Brown</u>,653 F.3d 337 (4th Cir. 2010); <u>United States v. Lewis</u>,633 F.3d 262 (4th Cir. 2010).

With respect to the government's arguments it is clear that the implication that Pearson's testimony is above reproach because if not he will receive a Life sentence is the theme advanced. The government's contention that the court will decide is Pearson is giving truthful testimony gives a false substance to the veracity of its content and is improper.

Given the critical nature of Pearson's testimony it cannot be said that the remarks were isolated or did not constitute a denial of Due Process. See <u>Darden v. Wainwright</u>,477 U.S. 168 (1986).

## ISSUE IIII

TRIAL COUNSEL WAS INEFFECTIVE FOR FAILURE TO REASONABLY ADVISE PETITIONER AS TO PLEA OFFER.

Petitioner asserts he was denied effective assistance of counsel in that trial counsel failed to relay a plea offered by the United States Attorney's Office by and thru counsel Christopher and Mary Davis, Esq. See Paragraph 12(D) Supporting Facts. This plea offer was never communicated properly to Mr. Goodman for his consideration and had it been would have been accepted under the circumstances of the case and given the real possibility of consecutive Life sentences if convicted.

Trial counsel has a duty to his client to personally consult with and advise of the consequences of pleading guilty or going to trial which was never done in this instance. See Boykins v. Alabama, 395 U.S. 238(1969)(In determining whether or not to plead guilty, the defendant should be made aware of the relevant circumstances and likely consequences so that he can make a intelligent choice). A defense attorney's failure to notify a client of a prosecutors plea offer constitutes defective performance, for purposes of a claim of ineffective assistance of counsel under the Sixth Amendment. See Boria v. Keane, 99 F.3d 492(2nd Cir. 1996)(Effective assistance of counsel includes counsels informed opinion as to what pleas should be entered); and American Bar Association's Model Code of Professional Responsibility, Ethical Consideration 7-7 (1992): A defense lawyer in a criminal case has the duty to advise his client fully on whether a particular plea to a charge appears to be desirable.

On March 21, 2012 the Supreme Court decided two cases involving the applicability of the Sixth Amendment's guarantee of effective

assistance of counsel to the plea bargaining stage of a criminal prosecution. Missouri v. Frye,566 U.S. __(2012), and Lafler v. Cooper,566 U.S. __(2012).

The question(s) addressed were not the fairness and reliability of the trial or the knowing and voluntariness of the plea but the process that proceeded them.

In Missouri v. Frye, the defendant was charged as a recidivist with driving with a revoked license. The prosecutor extended a plea offer to defense counsel, but counsel failed to communicate the offer to the defendant. subsequently, the defendant was charged with an additional instance of driving while revoked, which prompted the prosecutor to rescind the offer. The defendant still pled guilty, but on more severe terms.

Ultimately the Court held that the Sixth Amendment right to effective assistance of counsel extends to the consideration of plea offers that lapse or are rejected. as a general rule, defense counsel has a duty to communicate formal prosecution offers to accept a plea on terms and conditions that may be favorable to accused.

The Court distinguished its holdings in Hill v. Lockhart,474 U.S. 52 (1985), and Padilla v. Kentucky,559 U.S. __(2010), also dealing with guilty pleas, and found both still good law but differentiated the cases because of the facts of the case and juncture at which the ineffective representation occured (i.e., misadvice vs. lapse or rejection of plea offer). See Frye, supra.,"this application of Strickland to uncommunicated, lapsed pleas does not alter Hill's standard". Hill correctly applies in the context in which it arose, but it does not provide the sole means for demonstrating prejudice arising

from counsel's deficient performance during plea negotiations.

EVIDENTIARY HEARING REQUESTED

In the instant case a evidenriary hearing is requested to decide any controverted facts that remain and can only be resolved after a full and fair evidentiary hearing.

Before granting a full evidentiary hearing on a motion under 28 U.S.C. §2255, the sentencing court has discretion to determine whether the prisoner's claim is substantial, a hearing is required where controverted factual issues are not determined by the motion itself, by the trial court's files and records, or by the district judge's personal knowledge or recollection.

The Supreme Court has instructed in directing a hearing when, on the petition it can not be concluded with the assurance required by the statutory "conclusively show" standard, that under no circumstances could Petitioner esatblish facts warranting relief under §2255.

In the current factual condition this case must be afforded a evidentiary hearing on the merits and Petitioner allowed to expand the record under the Rules Governing §2255.

## CONCLUSION

WHEREFORE, for all the foregoing reasons, Petitioner respectfully requests this Honorable Court to grant the motion or any futher relief the Court deems fit in the interest of justice.

Dated: 10/1/12

Respectfully submitted,

*Frank Goodman*
Frank K. Goodman